**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| IOT INNOVATIONS LLC, | Civil Action No. _____ |
| Plaintiff, | **INJUNCTIVE RELIEF AND** |
| v. | **JURY TRIAL DEMANDED** |
| LUTRON ELECTRONICS CO., INC., | |
| Defendant. | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff IoT Innovations LLC ("IoT Innovations" or "Plaintiff") files this First Consolidated complaint against Lutron Electronics Co., Inc. ("Lutron" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1.     This is a patent infringement action to stop Lutron's infringement of the following United States Patents (collectively, the "Asserted Patents") issued by the United States Patent and Trademark Office ("USPTO"):

| | **U.S. Patent No.** | **Title** | |
|---|---|---|---|
| A. | 7,246,173 (the "'173 patent") | Method And Apparatus For Classifying Ip Data | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7246173 |
| B. | 7,280,830 (the "'830 patent") | Automatic Registration Services Provided Through A Home Relationship Established Between A Device And A Local Area Network | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7280830 |
| C. | 7,974,266 (the "'266 patent") | Method And Apparatus For Classifying Ip Data | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7974266 |

|    | U.S. Patent No. | Title | |
|----|-----------------|-------|---|
| D. | 7,974,260 (the "'260 patent") | Method Of Transmitting Time-Critical Scheduling Information Between Single Network Devices In A Wireless Network Using Slotted Point-To-Point Links | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7974260 |
| E. | 7,408,872 (the "'872 patent") | Modulation Of Signals For Transmission In Packets Via An Air Interface | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7408872 |
| F. | 8,401,571 (the "'571 patent") | Mobile Electronic System | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8401571 |
| G. | RE44,742 (the "'724 patent") | Dynamic Message Templates And Messaging Macros | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/RE44742 |

2.     IoT Innovations seeks injunctive relief and monetary damages.

## PARTIES

3.     IoT Innovations is a limited liability company formed under the laws of Texas with a registered office address located in Austin, Texas (Travis County).

4.     Based on public information and belief, Lutron is a corporation organized under the laws of the State of Pennsylvania and has its principal place of business located at 7200 Suter Road, Coopersburg, Pennsylvania 18036-1299 (Lehigh County).

5.     Based on public information and belief, Lutron maintains regular and established places of business in this District, including the locations at 101 N.W. 100th Avenue Plantation, Florida 33324 and 8794 Boynton Beach Blvd., Suite 210, Boynton Beach, Florida 33472.  *See* LUTRON.COM, https://www.lutron.com/en-US/Company-Info/Pages/AboutUS/USLocations.aspx.

6.     Based on public information and belief, Lutron may be served through its registered agent for service, Corporation Service Company, located at 1201 Hays Street Tallahassee, Florida 32301-2525.

## JURISDICTION AND VENUE

7.     IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

8.     This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

9.     Venue is proper against Lutron in this District pursuant to 28 U.S.C. § 1400(b) and 1391(c) because it has maintained established and regular places of business in this District and has committed acts of patent infringement in the District.  *See In re: Cray Inc.*, 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017).

10.     Lutron is subject to this Court's specific and general personal jurisdiction under due process because of Lutron's substantial business in this judicial District, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in this state and in this District.

11.     Specifically, Lutron intends to do and does business in, has committed acts of infringement in, and continues to commit acts of infringement in this District directly, through intermediaries, by contributing to and through inducement of third parties, and offers its products or services, including those accused of infringement here, to customers and potential customers located in this state, including in this District.

12.     Lutron maintains regular and established places of business in this District.

13.     Lutron offers products and services and conducts business in this District as described below.

14.     Lutron ships and causes to be shipped into the District infringing products and materials instructing its customers to perform infringing activities to its employees, exclusive and non-exclusive contractors, agents, and affiliates for installation, operation, and service at locations within this District.

15.     For example, upon information and belief, Lutron maintains regular and established places of business in the district, including at facilities located at 101 N.W. 100th Avenue Plantation, Florida 33324 and 8794 Boynton Beach Blvd., Suite 210, Boynton Beach, Florida 33472.     *See*     LUTRON.COM,     https://www.lutron.com/en-US/Company-Info/Pages/AboutUS/USLocations.aspx.

16.     Lutron commits acts of infringement from this District, including, but not limited to, use of the Accused Products and inducement of third parties to use the Accused Products in an infringing manner.

## THE ACCUSED PRODUCTS

17.     IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

18.     Based upon public information, Lutron owns, operates, advertises, and/or controls the website and domains www.lutron.com, through which it advertises, sells, offers to sell, provides and/or educates customers about their products and services.

19.     Lutron uses, causes to be used, sells, offers for sale, provides, supplies, or distributes its home security and control platform and systems, including but not limited those marketed as Lutron Smart Home Systems, which include, at least, the following (collectively, the "Accused Products"):

- **Processors & Systems and Applications & Software**:

- o RadioRA 3 processors

- o Homeworks QSX processors

- o Athena Commercial Lighting Control System

- o myRoom XC system

- o Vive Hub

- o HomeWorks System

- o Pegasus Wireless Processor

- o Lutron App

- o Lutron Radiora 2 + HWQS App

- o Lutron Vive App

- o Lutron Luxury Experience App

- o Lutron Home+ Legacy App

- o Lutron Home Control+ LEGACY App

- o Vive Vue

- o Enterprise Vue

- o Vive Designer+

- o Vive Hub Firmware

- o Lutron Dashboard

- o Lutron Designer

- o Quantum Vue

- o Hyperion

- o Designer+

- **Smart Home Devices & Controls**:

- o Smart Home Starter Kits

- o Smart Dimmers & Switches

- o Smart Remotes

- o Smart Keypads

- o Smart Plugs

- o Smart Motion Sensors

- o Smart Hub & Repeater

- o Smart Shades

- o Smart Timer

- o Thermostats

- o Smart Fan Control and RF modules

- o Remote Pedestals

- o Smart Sensors and temperature controls

- o Smart Downlights

- o Smart Lamps

- o Wall Controls

- **Ketra Devices & Lighting**:

  - o Ketra devices

  - o Ketra Lamp (S30 PAR 30 Lamp, S38 PAR 38 Lamp, A20 Lamp)

  - o KETRA D3 Downlight (D3-FXRD, D3-ADRD, D3-WWRD, D3-FXSQ, D3-ADSQ, D3-WWSQ)

  - o Wireless Controlled LED Lamp (KL01)

  - o LED Lighting Controller (0148)

- o LED Lighting Controller with BLE radio

- o Universal D2 Module Emitter

- o Athena Wireless Module

- **Lighting & Control Interfaces**:

- o FCC wall switch

- o Lighting Control Interface (A-WN-D01-OCC, A-WN-D01-RF, AFC1, etc.)

- o Low Voltage Lighting Control Interface (AFC1)

- o Dimmer (PKP1, ARST-H, HRST-H, MRST-H, RRST-H, DDM1)

- o RF Switch (DSW1)

- o RF Light Dimmer (DDM1)

- o Plug-In Switch (JPZ0128)

- o x96 (Ketra controller)

- **Wireless Processors & Modules**:

- o Wireless Processor (HQP7-RF-2, HQREP-RF, RR-PROC3, RR-REP3)

- Lutron Server(s), and Lutron's encryption technologies and its cellular and Wi-Fi capabilities, and their associated hardware and software and functionalities.

*See* **Exhibits A–G** (Evidence of Use Regarding Infringement of the Asserted Patents).

20.    Lutron also instructs its customers, agents, employees, and affiliates regarding how to use the Accused Products for home security and control.

21.    For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

**COUNT I.       INFRINGEMENT OF U.S. PATENT NO. 7,246,173**

22.    Plaintiff repeats and re-alleges the allegations in Paragraphs 1-21 above as though fully

set forth in their entirety.

23.     The USPTO duly issued U.S. Patent No. 7,246,173 (hereinafter, the "'173 patent") on July 17, 2007, after full and fair examination of Application No. 09/834,918, which was filed on April 16, 2001. *See* '173 patent at 1.

24.     IoT Innovations owns all substantial rights, interest, and title in and to the '173 patent, including the sole and exclusive right to prosecute this action and enforce the '173 patent against infringers and to collect damages for all relevant times.

25.     The claims of the '173 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of IP data classification systems and methods in packet switch networks.

26.     The written description of the '173 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

27.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '173 patent.

28.     Based upon information and belief, Plaintiff is informed and believes that Lutron has directly infringed one or more claims of the '173 patent by using, providing, supplying, or distributing the Accused Products.

29.     Upon information and belief, Lutron has directly infringed, either literally or under the

doctrine of equivalents, at least claim 1 of the '173 patent, as detailed in **Exhibit A** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,246,173)

30.     As just one example of infringement, as detailed in Exhibit A, the Accused Products perform a method of classifying Internet Protocol (IP) data to be sent from a source apparatus to a destination apparatus in a packet switched network, said method comprising: receiving said data at a first node, the data comprising a header comprising a list of at least one intermediate node to be visited on a way to the destination apparatus; and classifying said data at said first node based on an entry in said header.

31.     IoT Innovations has been damaged as a result of the infringing conduct by Lutron alleged above.  Thus, Lutron is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

<strong>COUNT II.     INFRINGEMENT OF U.S. PATENT NO. 7,280,830</strong>

32.     IoT Innovations repeats and re-alleges the allegations in Paragraphs 1-21 above as though fully set forth in their entirety.

33.     The USPTO duly issued U.S. Patent No. 7,280,830 (hereinafter, the "'830 patent") on October 9, 2007 after full and fair examination of Application No. 10/859,735 which was filed on June 2, 2004.  *See* '830 patent at p. 1.

34.     IoT Innovations owns all substantial rights, interest, and title in and to the '830 patent, including the sole and exclusive right to prosecute this action and enforce the '830 patent against infringers and to collect damages for all relevant times.

35.     The claims of the '830 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include

inventive components that improve upon the function and operation of automatic registration of a new device through the establishment of a home relationship with a network server.

36.     The written description of the '830 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

37.     Lutron has directly infringed and continues to infringe one or more claims of the '830 patent by using, providing, supplying, or distributing the Accused Products.

38.     Lutron has directly infringed and continues to infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '830 patent, as detailed in **Exhibit B** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,280,830).

39.     For example, as detailed in Exhibit B, Lutron, using the Accused Products and their associated hardware and software and functionalities, performs a method for automatic registration of a new wireless device with a registration server, comprising: establishing a home relationship between the new wireless device and a network server, such that no additional configuration is required by a user of the new device to communicate over a network once the relationship is established, wherein establishing a home relationship includes, determining at the network server, that the wireless device is an owned device, wherein the owned device is previously known to the network server; automatically obtaining registration information for the new device; establishing a connection between a registration server and the network server; and sending the registration information from the network server to the registration server.

40.     Since at least the time of receiving the original complaint in this action, Lutron has

also indirectly infringed the '830 patent by inducing others to directly infringe the '830 patent. Lutron has induced end-users, including, but not limited to, Lutron's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '830 patent by providing or requiring use of the Accused Products.  Lutron took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '830 patent, including, for example, claim 1 of the '830 patent.  Such steps by Lutron included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Lutron is performing these steps, which constitute induced infringement with the knowledge of the '830 patent and with the knowledge that the induced acts constitute infringement.  Lutron is aware that the normal and customary use of the Accused Products by others would infringe the '830 patent.

41.     Lutron's inducement is ongoing.

42.     Since at least the time of receiving the original complaint in this action, Lutron has also indirectly infringed by contributing to the infringement of the '830 patent.  Lutron has contributed to the direct infringement of the '830 patent by their personnel, contractors, and customers.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '830 patent, including, for example, claim 1 of the '830 patent.  The special features constitute a material part of the invention of one or more of the claims of the '830 patent and are not staple articles of commerce suitable for substantial non-infringing use.

43.     Lutron's contributory infringement is ongoing.

44.     Lutron had knowledge of the '830 patent at least as of the date when it was notified of the filing of the original complaint in this action.

45.     Furthermore, on information and belief, Lutron has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

46.     Lutron's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Lutron.

47.     Lutron's direct infringement of one or more claims of the '830 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations' rights under the patent.

48.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '830 patent.

49.     IoT Innovations has been damaged as a result of the infringing conduct by Lutron alleged above.  Thus, Lutron is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

50.     IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  IoT Innovations has and will continue to suffer this harm by virtue of Lutron's infringement of the '830 patent.  Lutron's actions have interfered with and will interfere with IoT Innovations' ability to license technology.  The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology.  The

public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

**COUNT III.      DIRECT INFRINGEMENT OF U.S. PATENT NO. 7,974,266**

51.     Plaintiff repeats and re-alleges the allegations in Paragraphs 1-21 above as though fully set forth in their entirety.

52.     The USPTO duly issued U.S. Patent No. 7,974,266 (hereinafter, the "'266 patent") on July 5, 2011, after full and fair examination of Application No. 11/778,822, which was filed on July 17, 2007. *See* '266 patent at 1. A Certificate of Correction was issued on November 22, 2011. *See id.* at 11.

53.     IoT Innovations owns all substantial rights, interest, and title in and to the '266 patent, including the sole and exclusive right to prosecute this action and enforce the '266 patent against infringers and to collect damages for all relevant times.

54.     The claims of the '266 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of data transmission in a in a packet switch network.

55.     The written description of the '266 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

56.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one

or more claims of the '266 patent.

57.     Based upon information and belief, Plaintiff is informed and believes that Lutron has directly infringed one or more claims of the '266 patent by using, providing, supplying, or distributing the Accused Products.

58.     Upon information and belief, Lutron has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '266 patent, as detailed in **Exhibit C** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,408,872).

59.     As just one example of infringement, as detailed in Exhibit C, the Accused Products perform a method of classifying data comprising: receiving Internet Protocol (IP) data at a first node: classifying the IP data received at the first node based on a last destination address entry of a plurality of destination address entries in a header of the IP data; and forwarding the IP data from the first node to a second node, wherein the IP data is classified at the second node based on the last destination address entry of the plurality of destination address entries in the header of the IP data.

60.     IoT Innovations has been damaged as a result of the infringing conduct by Lutron alleged above.  Thus, Lutron is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

   **COUNT IV.       DIRECT INFRINGEMENT OF U.S. PATENT NO. 7,974,260**

61.     Plaintiff repeats and re-alleges the allegations in Paragraphs 1-21 above as though fully set forth in their entirety.

62.     The USPTO duly issued U.S. Patent No. 7,974,260 (hereinafter, the "'260 patent") on July 5, 2011, after full and fair examination of Application No. 10/489,269, which was filed on

September 10, 2001.  *See* '260 patent at 1.  A Certificate of Correction was issued on November 29, 2011.  *See id.* at 17.

63.     IoT Innovations owns all substantial rights, interest, and title in and to the '260 patent, including the sole and exclusive right to prosecute this action and enforce the '260 patent against infringers and to collect damages for all relevant times.

64.     The claims of the '260 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of timing controls among devices in a wireless network setting.

65.     The written description of the '260 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

66.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '260 patent.

67.     Based upon information and belief, Plaintiff is informed and believes that Lutron has directly infringed and continues to infringe one or more claims of the '260 patent by making, using, selling, offering for sale, providing, supplying, distributing, and/or internal and external testing the Accused Products.

68.     Upon information and belief, Lutron has directly infringed and continues to infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '260 patent, as detailed

in **Exhibit D** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,974,260).

69.     As just one example of infringement, as detailed in Exhibit D, the Accused Products include a device comprising: a processor; a non-transitory computer-readable medium including computer-executable instructions stored thereon that, if executed by the processor, cause the processor to: define a data sequence, the data sequence including a header portion and a payload portion, wherein the header portion includes an address code of a second device and the payload portion includes timing control information for communicating packets between devices in a communication network wherein the timing control information defines when the second device communicates, wherein the address code is a first active member address of the second device, and wherein the first active member address and a second active member address are assigned to the second device; and an antenna configured to transmit the defined data sequence in a data communication packet to the second device in a time defined contact slot.

70.     Since at least the time of receiving the original complaint in this action, Lutron has also indirectly infringed the '260 patent by inducing others to directly infringe the '260 patent. Lutron has induced end-users, including, but not limited to, Lutron's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '260 patent by providing or requiring use of the Accused Products.  Lutron took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '260 patent, including, for example, claim 1 of the '260 patent.  Such steps by Lutron included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.

Lutron is performing these steps, which constitute induced infringement with the knowledge of the '260 patent and with the knowledge that the induced acts constitute infringement. Lutron is aware that the normal and customary use of the Accused Products by others would infringe the '260 patent.

71.     Lutron's inducement is ongoing.

72.     Since at least the time of receiving the original complaint in this action, Lutron has also indirectly infringed by contributing to the infringement of the '260 patent. Lutron has contributed to the direct infringement of the '260 patent by their personnel, contractors, and customers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '260 patent, including, for example, claim 1 of the '260 patent. The special features constitute a material part of the invention of one or more of the claims of the '260 patent and are not staple articles of commerce suitable for substantial non-infringing use.

73.     Lutron's contributory infringement is ongoing.

74.     Lutron had knowledge of the '260 patent at least as of the date when it was notified of the filing of the original complaint in this action.

75.     Furthermore, on information and belief, Lutron has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

76.     Lutron's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Lutron.

77.     Lutron's direct infringement of one or more claims of the '260 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations' rights

under the patent.

78.    IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '260 patent.

79.    IoT Innovations has been damaged as a result of the infringing conduct by Lutron alleged above.  Thus, Lutron is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

80.    IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  IoT Innovations has and will continue to suffer this harm by virtue of Lutron's infringement of the '260 patent.  Lutron's actions have interfered with and will interfere with IoT Innovations' ability to license technology.  The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology.  The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

**COUNT V.     INFRINGEMENT OF U.S. PATENT NO. 7,408,872**

81.    IoT Innovations repeats and re-alleges the allegations in Paragraphs 1-21 above as though fully set forth in their entirety.

82.    The USPTO duly issued U.S. Patent No. 7,408,872 (hereinafter, the "'872 patent") on August 5, 2008, after full and fair examination of Application No. 10/483,367, which was filed on July 13, 2004, which claims priority to a PCT application, filed July 9, 2001.  *See* '872 patent at 1.

83.    IoT Innovations owns all substantial rights, interest, and title in and to the '872 patent,

including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

84.     The claims of the '872 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components and functionalities that improve upon signal modulation in a wireless network.

85.     The written description of the '872 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

86.     Lutron has directly infringed infringe one or more claims of the '872 patent by making, using, selling, offering to sell, providing, supplying, or distributing the Accused Products.

87.     For instance, Lutron has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '872 patent, as detailed in **Exhibit E** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,974,266).

88.     For example, as detailed in Exhibit E, Lutron, using the Accused Products, perform a method for modulating signals, wherein signals are to be transmitted by a device in packets via an air interface, the method comprising: receiving a first plurality of bits and a second plurality of bits, creating a pair of bits by adding a set bit to a first bit of said first plurality of bits, wherein one of said set bit and said first bit of said first plurality of bits has a fixed value, and mapping one of a first set of values to said pair of bits according to a selected modulation scheme and mapping a second set of values to said second plurality of bits according to said selected modulation scheme.

89.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '872 patent.

90.     IoT Innovations has been damaged as a result of the infringing conduct by Lutron alleged above.  Thus, Lutron is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT VI.     INFRINGEMENT OF U.S. PATENT NO. 8,401,571**

91.     IoT Innovations repeats and re-alleges the allegations in Paragraphs 1-21 above as though fully set forth in their entirety.

92.     The USPTO duly issued U.S. Patent No. 8,401,571 (hereinafter, the "'571 patent") on March 19, 2013 after full and fair examination of Application No. 10/534,012 which was filed on May 5, 2005, which claims priority to a PCT application, filed November 5, 2002.  *See* '571 patent at 1.  A Certificate of Correction was issued on March 11, 2014.  *See id.* at 11.

93.     IoT Innovations owns all substantial rights, interest, and title in and to the '571 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

94.     The claims of the '571 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the operation of previous devices and systems by using a posture of an apparatus to select a mode of presentation.

95.     The written description of the '571 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-

conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

96.     Lutron has directly infringed and continues to infringe one or more claims of the '571 patent by using, providing, supplying, or distributing the Accused Products.

97.     For instance, Lutron has directly infringed and continues to infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '571 patent, as detailed in **Exhibit F** (Evidence of Use Regarding Infringement of U.S. Patent No. 8,401,571).

98.     For example, as detailed in Exhibit F, the Accused Products comprise an apparatus with at least one processing component configured to process data indicative of the current posture of said apparatus for enabling a posture related presentation of information to a user *via* an output component, said processing including selecting one of at least two different modes of presentation depending on said current posture of said apparatus.

99.     Since at least the time of receiving the original complaint in this action, Lutron has also indirectly infringed one or more claims of the '571 patent by inducing others to directly infringe said claims.  Lutron has induced end-users, including, but not limited to, Lutron's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '571 patent by providing or requiring use of the Accused Products.  Lutron took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '571 patent, including, for example, claim 1 of the '571 patent.  Such steps by Lutron included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an

infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Lutron is performing these steps, which constitute induced infringement with the knowledge of the '571 patent and with the knowledge that the induced acts constitute infringement.  Lutron is aware that the normal and customary use of the Accused Products by others would infringe the '571 patent.

100.    Lutron's inducement is ongoing.

101.    Lutron had knowledge of the '571 patent at least as of the date when they were notified of the filing of this action.

102.    Furthermore, on information and belief, Lutron has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

103.    Lutron's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Lutron.

104.    Lutron's direct infringement of one or more claims of  the '571 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations' rights under the patent.

105.    IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '571 patent.

106.    IoT Innovations has been damaged as a result of the infringing conduct by Lutron alleged above.  Thus, Lutron is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

107.     IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  IoT Innovations has and will continue to suffer this harm by virtue of Lutron's infringement of the '571 patent.  Lutron's actions have interfered with and will interfere with IoT Innovations' ability to license technology.  The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology.  The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

### COUNT VII.     INFRINGEMENT OF U.S. PATENT NO. RE44,742

108.     IoT Innovations repeats and re-alleges the allegations in Paragraphs 1-21 above as though fully set forth in their entirety.

109.     The USPTO duly issued U.S. Patent No. RE44,742 (hereinafter, the "'742 patent") on February 4, 2014 after full and fair examination of Application No. 13/542,351 which was filed on July 5, 2012.  *See* '742 patent at 1.  The '724 patent is a reissue of U.S. Patent No. 7,751,533.  *See id.* at 12.

110.     IoT Innovations owns all substantial rights, interest, and title in and to the '742 patent, including the sole and exclusive right to prosecute this action and enforce the '742 patent against infringers and to collect damages for all relevant times.

111.     The claims of the '742 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting template-based messaging systems.

112.     The written description of the '742 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-

conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

113.    Lutron has directly infringed one or more claims of the '742 patent by using, providing, supplying, or distributing the Accused Products.

114.    For instance, Lutron has directly infringed, either literally or under the doctrine of equivalents, at least claim 22 of the '742 patent, as detailed in **Exhibit G** (Evidence of Use Regarding Infringement of U.S. Patent No. RE44,742).

115.    For example, as detailed in Exhibit G, Lutron, using the Accused Products, perform a method comprising determining, by a processing device, a message to be generated from a message template; automatically populating, by the processing device, a dynamic field of the message template with message context data in response to the determination; and sending, by the processing device, the message having the message context data in the dynamic field of the message template to a remote device.

116.    Since at least the time of receiving the original complaint in this action, Lutron has also indirectly infringed the '742 patent by inducing others to directly infringe the '742 patent. Lutron has induced end-users, including, but not limited to, Lutron's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '742 patent by providing or requiring use of the Accused Products.  Lutron took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '742 patent, including, for example, claim 22 of the '742 patent.  Such steps by Lutron included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing

manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Lutron is performing these steps, which constitute induced infringement with the knowledge of the '742 patent and with the knowledge that the induced acts constitute infringement. Lutron is aware that the normal and customary use of the Accused Products by others would infringe the '742 patent.

117.    Lutron's inducement is ongoing.

118.    Lutron has also indirectly infringed by contributing to the infringement of the '742 patent. Lutron has contributed to the direct infringement of the '742 patent by their personnel, contractors, and customers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '742 patent, including, for example, claim 22 of the '742 patent. The special features constitute a material part of the invention of one or more of the claims of the '742 patent and are not staple articles of commerce suitable for substantial non-infringing use.

119.    Lutron's contributory infringement is ongoing.

120.    Lutron had knowledge of the '742 patent at least as of the date when it was notified of the filing of this action.

121.    Furthermore, on information and belief, Lutron has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

122.    Lutron's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Lutron.

123.    Lutron's direct infringement of one or more claims of  the '742 patent is, has been,

and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations' rights under the patent.

124.    IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '742 patent.

125.    IoT Innovations has been damaged as a result of the infringing conduct by Lutron alleged above.  Thus, Lutron is liable to Plaintiff in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

126.    IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  IoT Innovations has and will continue to suffer this harm by virtue of Lutron's infringement of the '742 patent.  Lutron's actions have interfered with and will interfere with IoT Innovations' ability to license technology.  The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology.  The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## JURY DEMAND

127.    IoT Innovations hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

128.    IoT Innovations requests that the Court find in its favor and against Lutron, and that the Court grant IoT Innovations the following relief:

> a.    Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Lutron or others acting in

concert therewith;

b.  A permanent injunction enjoining Lutron and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '830 patent, the '260 patent, the '571 patent, and the '742 patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of said patents by such entities;

c.  Judgment that Lutron accounts for and pays to IoT Innovations all damages to and costs incurred by IoT Innovations because of Lutron's infringing activities and other conduct complained of herein;

d.  Judgment that Lutron's infringements be found willful as to the '830 patent, the '260 patent, the '571 patent, and the '742 patent, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.  Pre-judgment and post-judgment interest on the damages caused by Lutron's infringing activities and other conduct complained of herein;

f.  That this Court declare this an exceptional case and award IoT Innovations its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.  All other and further relief as the Court may deem just and proper under the circumstances.

Respectfully submitted March 12, 2025.

/s/ Brian R. Gilchrist
Brian R. Gilchrist, FL Bar No. 774065
bgilchrist@allendyer.com
**ALLEN, DYER, DOPPELT + GILCHRIST, P.A.**
255 S. Orange Avenue, Suite 1401
Orlando, Florida 32801
Tel. (407) 841-2330
Fax: (407) 841-2343

James F. McDonough, III (GA 117088)*
Lead Counsel
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866
Email: jim@rhmtrial.com

Kristin M. Whidby (VA 91805)*
**ROZIER HARDT MCDONOUGH PLLC**
1500 K Street, 2nd Floor
Washington, District of Columbia 20005
Telephone: 217-0575, (708) 870-5803
Email: kristin@rhmtrial.com

***Attorneys for Plaintiff IoT INNOVATIONS LLC***

*\*Pro hac vice* application to be filed

## Exhibit List

A.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,246,173
B.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,280,830
C.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,408,872
D.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,974,260
E.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,974,266
F.  Evidence of Use Regarding Infringement of U.S. Patent No. 8,401,571
G.  Evidence of Use Regarding Infringement of U.S. Patent No. RE44,742